## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ALARM DETECTION SYSTEMS, INC., an
Illinois corporation,

        Plaintiff,

vs.

ORLAND FIRE PROTECTION DISTRICT;
TYCO INTEGRATED SECURITY, LLC;
AND DUPAGE PUBLIC SAFETY
COMMUNICATION,

        Defendants.

Case No.: 14 cv 876

Judge:      Thomas M. Durkin

Magistrate:  Jeffrey T. Gilbert

## PLAINTIFF ALARM DETECTION SYSTEMS' MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## POINTS AND AUTHORITIES

Page

I. INTRODUCTION. ...................................................................................................1

*ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
672 F.3d 492 (7th Cir. 2012) ........................................................1, 3, 4

*ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
724 F.3d 854 (7th Cir. 2013) ..............................................................1, 3

Fed. R. Civ. P. 56(c) .......................................................................................3

*Fincher v. S. Bend Heritage Found.*,
606 F.3d 331 (7th Cir. 2010) ...............................................................3

II. STATEMENT OF THE CASE. ................................................................................4

III. STATEMENT OF FACTS. ......................................................................................4

    A.    Bloomingdale FPD ...............................................................................5

        *ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
        724 F.3d 854 (7th Cir. 2013) ......................................................5, 6

    B.    Lemont FPD .........................................................................................6

        *ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
        724 F.3d 854 (7th Cir. 2013) ...........................................................7

    C.    Orland FPD .........................................................................................8

    D.    DU-COMM ..........................................................................................9

    Intergovernmental Cooperation Act, 5 ILCS 220/2 (1) ...............................9

    E.    Tyco ...................................................................................................10

IV. Defendants Are Precluded from Raising Certain Arguments Due to Judicial Estoppel and Express Admissions. ........................................................................................10

*ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
672 F.3d 492 (7th Cir. 2012) .........................................................10, 11

i

*Grochocinski v. Mayer Brown Rowe & Maw, LLP*,
    719 F.3d 785 (7th Cir. 2013) ...................................................................11

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)...............................................................................11

V.   DEFENDANTS' INVOLVEMENT IN FIRE ALARM MONITORING VIOLATES
     THE DISTRICT ACT................................................................................11

     IN FIRE ALARM MONITORING VIOLATES THE DISTRICT ACT. ........................11

*ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
    672 F.3d 492 (7th Cir. 2012) ...................................................................11

     A.   The Districts Are Not Authorized to Engage in the Business. ................12

          *ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
              672 F.3d 492 (7th Cir. 2012) .....................................................12, 13, 14

          70 ILCS 705/0.01 *et seq*...........................................................................12

          *ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
              724 F.3d 854 (7th Cir. 2013) .....................................................12, 13, 14

          *Wilkes v. Deerfield-Bannockburn Fire Prot. Dist.*,
              80 Ill. App.3d 327 (2d Dist. 1979) ...............................................13

          70 ILCS 705/22 .....................................................................................13

          *Glenview Rural Fire Prot. Dist. v. Raymond*,
              19 Ill. App.3d 272 (1st Dist. 1974) ...............................................13

          70 ILCS 705/14 .....................................................................................14

     B.   Orland FPD's Involvement in the Business, and Tyco's Agreement with Orland
          FPD, Are Illegal. .....................................................................................14

          *ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
              672 F.3d 492 (7th Cir. 2012) .....................................................14, 15, 16

          *ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
              724 F.3d 854 (7th Cir. 2013) ...........................................................15, 16

          *Ill. St. Bar Ass'n Mutual Ins. Co. v. Coregis Ins. Co.*,
              355 Ill.App.3d 156 (1st Dist. 2004) ...............................................15

LISLE\169634.7
ID\METH - 110623\000003

*Ad-Ex, Inc. v. Chicago*,
    207 Ill. App.3d 163 (1st Dist. 1990) ................................................................15

*McMahon v. City of Chicago*,
    789 N.E.2d 347 (1st Dist. 2003) ...................................................................15

*Kelley v. Chi. Park Dist.*,
    635 F.3d 290 (7th Cir. 2011) ........................................................................15

70 ILCS 1205/4-1, *et seq.* .....................................................................................15

*Hesbol v. Bd. of Educ. of Laraway Cmty. Consol. Sch. Dist. 70-C*,
    14 F. Supp. 3d 1101, 1106 (N.D. Ill. 2014) ...................................................15

*Northwest Diversified, Inc. v. Desai*,
    353 Ill. App. 3d 378 (1st Dist. 2004) ............................................................16

C.    DU-COMM Has No Authority under the District Act or its Statutory Mandate to
    Engage in Fire Alarm Monitoring or Collect Fees. ............................................16

    1.    DU-COMM Cannot Be Delegated Powers That Its Fire Protection District
        Members Do Not Have. .................................................................................17

        *ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
            724 F.3d 854 (7th Cir. 2013) ..............................................................17

    2.    Bloomingdale FPD and the Other Fire Protection Districts Did Not Have
        the Authority to Create DU-COMM as an Independent Legal Entity. .......17

        *Maltby v. Winston*,
            36 F.3d 548,551(7th Cir. 1994) ..........................................................17

        50 ILCS 750/0.01 *et seq.*...........................................................................18

        *Hall v. Vill. of Flossmoor Police Dep't*,
            2012 U.S. Dist. LEXIS 13311 (N.D. Ill. Feb. 1, 2012) ......................18

    3.    Fire Protection Districts Cannot Accomplish by an Intergovernmental
        Agreement What They Are Not Already Statutorily Empowered to Do...18

        5 ILCS 220/3 .............................................................................................18

        *Lisle v. Woodridge*,
            192 Ill. App.3d 568 (2d Dist. 1989).....................................................19

        *Opal v. Cencom E 911*,
            1994 US. Dist. LEXIS 3536 (N.D. Ill, 1994) ......................................19

iii

*ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
724 F.3d 854 (7th Cir. 2013) ..............................................................19

*Ill. St. Bar Ass'n Mutual Ins. Co. v. Coregis Ins. Co.*,
355 Ill.App.3d 156 (1st Dist. 2004) ...................................................19

D.    Defendants Have Been Unjustly Enriched to ADS's Detriment. ...........19

*HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*,
131 Ill. 2d 145 (1989) .......................................................................20

*Nat'l Union Fire Ins. Co. v. DiMucci*,
2015 IL App (1st) 122725, 393 Ill. Dec. 495 ....................................20

VI.    CONCLUSION ................................................................................20

LISLE\169634.7
ID\METH - 110623\000003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALARM DETECTION SYSTEMS, INC., an Illinois corporation, | |
| Plaintiff, | Case No.: 14 cv 876 |
| vs. | |
| ORLAND FIRE PROTECTION DISTRICT; TYCO INTEGRATED SECURITY, LLC; AND DUPAGE PUBLIC SAFETY COMMUNICATION, | Judge: Thomas M. Durkin |
| | Magistrate: Jeffrey T. Gilbert |
| Defendants. | |

**PLAINTIFF ALARM DETECTION SYSTEMS' MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.   INTRODUCTION.

Given Tyco's success in establishing the limits of authority regarding fire alarm monitoring in fire protection districts in Illinois, it is ironic that Tyco is now defending the same behavior determined unlawful in the *Lisle-Woodridge* cases. Moreover, Tyco demanded that Bloomingdale FPD and Lemont FPD exit their illegal fire alarm monitoring networks based on *ADT II*. Yet, it now proclaims that these illegal networks were somehow legitimized by Tyco buying them. Moreover, the rulings in *ADT I* and *ADT II* establish that the current Tyco Businesses in all three Districts are *ultra vires* under the District Act. *ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.,* 672 F.3d 492 (7th Cir. 2012) ("*ADT I*"); *ADT Sec. Servs. v. Lisle-*

*Woodridge Fire Prot. Dist.*, 724 F.3d 854 (7th Cir. 2013) ("*ADT II*"). For these reasons, Tyco is judicially estopped from arguing the legality of any of these arrangements.

The Seventh Circuit has previously determined that fire protection districts and DU-COMM do not have the authority under the District Act to collect fees for fire alarm monitoring. Yet, both Orland FPD and DU-COMM are collecting such fees with impunity. Tyco funnels such fees to these other two Defendants even though Tyco knows that such fees are illegal, as evidenced by Tyco's demands to Bloomingdale FPD and Lemont FPD.

The essential facts establishing the illegal conduct are undisputed. In a nutshell, both DU-COMM and Orland FPD are monitoring for fees charged Tyco's Commercial Accounts[1] in the Bloomingdale Territory and the Lemont Territory respectively. Neither entity has any statutory authority to engage in such activities. In fact, DU-COMM, a public agency established solely to operate a 911 communications center, was never authorized by its own formation documents to engage in fire alarm monitoring, but has been engaged in fire alarm monitoring for a fee collected from residents of the Bloomingdale Territory. There is absolutely no difference between Bloomingdale FPD collecting such fees from its residents which Tyco declared illegal and DU-COMM collecting such fees today.

The fire alarm monitoring in the Orland Territory is equally illegal. Orland FPD granted an exclusive contract to Tyco in 2014 to provide transmitters, fire alarm services, and related activities to all the Commercial Accounts in the Orland Territory. Orland FPD even secured ordinances from the Villages of Orland Park and Orland Hills to insure that Orland Central Dispatch was the only remote supervising station allowed to monitor such accounts. Orland FPD

---

[1] All capitalized terms not otherwise defined has the same meaning as used in the complaint and prior filings with this Court.

then received fees from Tyco that are charged to all Commercial Accounts in the Orland Territory. Orland FPD thus was able with Tyco to control almost 100% of the Business in the Orland Territory. The Seventh Circuit has clearly determined that all these arrangements violate the District Act.

To disentangle these illegal relationships, the District Court in *Lisle-Woodridge* voided the contract between Chicago Metro and Lisle-Woodridge FPD. After *ADT I* was decided and the District Court's injunction was modified, the District Court voided the subscriber agreements between Lisle-Woodridge FPD and its Commercial Accounts. Both contractual relationships were deemed *ultra vires*. This injunctive relief was affirmed by the Seventh Circuit in *ADT I* and *ADT II* respectively.

ADS's motion for partial summary judgment focuses on one central issue—the lack of authority of the parties to engage in the Business of fire alarm monitoring (the "Business") under the District Act or any other applicable state law. All these acts of the Defendants (the "Illegal Acts") were found to be unlawful in *ADT I* and *ADT II.*

This Court has recognized that the allegations of the receipt of fees by DU-COMM or Orland FPD states a claim under the District Act. Dkt. 237, at 29. There are no genuine issues of material fact relating to the claims that Tyco and Orland FPD, as well as DU-COMM, are perpetuating such Illegal Acts. Fed. R. Civ. P. 56(c); *see also Fincher v. S. Bend Heritage Found.,* 606 F.3d 331, 333 (7th Cir. 2010). ADS relies in support of its Motion primarily on Stipulations and Admissions that the Defendants (excepting DU-COMM) made previously.[2]

---

[2] Some of the stipulations and admissions were actually entered into with Bloomingdale FPD and Lemont FPD prior to their being dismissed and Tyco also made admissions in its responses to Plaintiff's First Set of Requests for Admission.

3

In addition, given the rulings and Tyco's role in *Lisle-Woodridge*, Tyco cannot ignore the issues it advanced and on which it prevailed in this prior case. Tyco has also made admissions which preclude its contrary contentions now. Judicial estoppel binds Tyco and can, in certain circumstances, binds the other Defendants as well.

## II. STATEMENT OF THE CASE.

As this Court has gone through an extensive review of ADS's Amended Complaint, it is not necessary to introduce this Court to the case. ADS nevertheless notes that it filed its Second Amended Verified Complaint to address the concerns raised by this Court's recent opinion and refocus its allegations on the remaining participants in the Illegal Acts. Not only does ADS cite violations of the District Act, but also alleges that such practices violate the anti-monopoly provisions of the federal antitrust laws and the protections afforded by the Fourteenth Amendment as set out in ADS's Civil Rights Act claims. ADS seeks to enjoin Orland FPD, Tyco, and DU-COMM from continuing these Illegal Acts. ADS also seeks damages and attorneys' fees from all the Defendants pursuant to federal fee shifting statutes.

## III. STATEMENT OF FACTS.

Bloomingdale FPD, Lemont FPD, and Orland FPD are all fire protection districts organized under the District Act to provide fire protection within the geographic boundaries of their respective Territories. (Facts, ¶¶ 4-6, 11)[3] Each of the Districts contracted with one private alarm contractor in order to set up Direct Wire and wireless networks[4] to monitor fire alarm systems of Commercial Accounts. (Facts, ¶¶ 18, 29, 36, 52-54) Each District adopted one or more ordinances or policies that required virtually all Commercial Accounts within their

---

[3] All references to "Facts" relate to ADS's Rule 56.1 Statement of Facts.

[4] "Direct Wire" uses dedicated phone lines and "wireless networks" use radio transmitters to send Signals to the monitoring facility.

LISLE\169634.7
ID\METH - 110623\000003

respective Territories to contract for fire alarm monitoring pursuant to Subscriber Agreements with the Districts or Customer Contracts with Tyco. (Facts, ¶¶ 19, 20, 37, 55)

### A.    Bloomingdale FPD

Prior to 2005, 95% of the Commercial Accounts in the Bloomingdale Territory were connected by Direct Wire to Bloomingdale FPD. (Facts, ¶17)   Sometime in 2004, Bloomingdale FPD implemented a wireless fire alarm monitoring network to be owned by Bloomingdale FPD, with equipment installed and maintained by Chicago Metro.  (Facts, ¶ 18)  Bloomingdale FPD then required virtually all Commercial Accounts in the Bloomingdale Territory to contract with the District and either lease wireless transmitters from the District or use existing Direct Wire transmitters sending Signals to the District; obtain fire alarm monitoring from the District; and pay monthly monitoring fees to the District. (Facts, ¶ 21)   By ordinance, Bloomingdale FPD established the alarm monitoring fee schedule for such Commercial Accounts. (Facts, ¶ 20)

Bloomingdale FPD transferred the monitoring functions for its wireless network to DU-COMM effective May 1, 2013. (Facts, ¶ 22)  From that date forward, Bloomingdale FPD paid a portion of the monitoring fees it collected from Commercial Accounts using wireless transmitters ($14/mo/account) to DU-COMM. (Facts, ¶ 23)

On September 3, 2013, based on the ruling in *ADT II*, Tyco sent a letter to Bloomingdale FPD stating that Bloomingdale FPD was violating the District Act by, *inter alia*: (1) engaging in the fire alarm monitoring business and monitoring alarms; (2) displacing the private market for fire alarm monitoring within the political boundaries of the District; (3) requiring a sole provider of fire alarm transmitters and monitoring; and (4) charging commercial customers for alarm monitoring even though the District Act provided no authority to charge residents fees for such services. (Facts, ¶ 26)

5

After the decision in *ADT II* and the filing of other litigation against fire protection districts, Bloomingdale FPD decided to exit the Business. (Facts, ¶ 27)   To this end, Bloomingdale FPD entered into an agreement with Tyco to sell all of the District's fire alarm monitoring equipment including the installed wireless transmitters in the premises of the District's Commercial Accounts, the alarm receiving ("head end") equipment located at Fire Station #21, and the District's inventory of fire alarm monitoring equipment for $225,000. (Facts, ¶ 28)   Further, Bloomingdale FPD assigned all of Bloomingdale FPD's Subscriber Agreements with Commercial Accounts to Tyco. (Facts, ¶ 31)   These agreements covered approximately 689 customers -virtually 100% of the Commercial Accounts in the Bloomingdale Territory. (Facts, ¶ 29)

Tyco then took over the Business from Bloomingdale FPD and provided fire alarm monitoring services to all these Commercial Accounts. (Facts, ¶ 32)   Tyco also assumed responsibility for paying DU-COMM the monthly fees for monitoring Commercial Accounts on the wireless network. (Facts, ¶ 74)   As of September 5, 2014, Tyco was providing fire alarm monitoring services to 459 Commercial Accounts which were originally assigned by Bloomingdale FPD, with 333 still subject to Subscriber Agreements and the other 129 subject to Tyco Customer Contracts. (Facts, ¶ 34)

**B.    Lemont FPD**

Prior to 2002, Commercial Accounts in the Lemont Territory could choose either  Direct Wire transmitters sending Signals to Lemont FPD or other forms of transmission and monitoring provided by private alarm contractors. (Facts, ¶ 35)   In May 2002, Lemont FPD began implementing a wireless fire alarm monitoring network to be owned by Lemont FPD, with equipment installed and maintained by Cross Points. (Facts, ¶ 36)

6

Also in 2002, Lemont FPD adopted and began enforcing an Ordinance requiring that Signals from all Commercial Accounts in the Lemont Territory be directly connected to Lemont FPD's communications center, either by Direct Wire or a wireless network using transmitters leased from Lemont FPD. (Facts, ¶¶ 37, 41)  Such Commercial Accounts were required to enter into Subscriber Agreements in order for Lemont FPD to provide fire alarm monitoring. (Facts, ¶ 38)  Lemont FPD collected fees from such Commercial Accounts pursuant to the Lemont Subscriber Agreements. (Facts, ¶ 40)  In this manner, Lemont FPD took over virtually 100% of the Business with Commercial Accounts in the Lemont Territory. (Facts, ¶¶ 40, 47, 48)

On September 3, 2013, Tyco sent a letter to Lemont FPD based on the ruling in *ADT II*, with the same assertions of Lemont FPD's illegal activity and violations of the District Act as Tyco had made in its letter to Bloomingdale FPD noted above. (Facts, ¶ 43)  Based on the decision in *ADT II*, Lemont FPD decided to exit the Business. (Facts, ¶ 44)  Lemont FPD subsequently sold all its transmission and receiving equipment to Tyco for $70,000, including the wireless transmitters in the premises of the Commercial Accounts. (Facts, ¶ 45)  Lemont FPD also assigned all its Subscriber Agreements to Tyco. (Facts, ¶ 46)

On May 1, 2014, Tyco took over fire alarm monitoring in the Lemont Territory. (Facts, ¶ 49)  On that same date, Orland Central Dispatch became responsible for handling fire alarm monitoring for Tyco's Lemont accounts. *Id.*  Tyco agreed to pay Orland FPD $14 per month per account to monitor all of Tyco's Commercial Accounts in the Lemont Territory. (Facts, ¶ 74) Lemont FPD assigned 322 Subscriber Agreements with Commercial Accounts to Tyco in April 2014. (Facts, ¶¶ 47, 48)  As of September 5, 2014, Tyco continued to provide monitoring to 240 of these Commercial Accounts. (Facts, ¶ 51)

7

### C.    Orland FPD

In 2003, Orland FPD entered into an exclusive contract (the "Orland Agreement") with Tyco for fire alarm monitoring and receiving equipment, making Tyco the sole approved provider of such services to Commercial Accounts in the Orland Territory. (Facts, ¶ 55)  Using Tyco equipment, Orland Central Dispatch monitored fire alarm systems of Commercial Accounts in the Orland Territory using Direct Wire, eventually adding a wireless network with transmitters supplied by Tyco to Commercial Accounts. (Facts, ¶¶ 55, 57)  In 2006, Orland FPD adopted Ordinance 2006-003, which provided that "[a]larm, supervisory, and trouble signals . . . shall be directly connected" to the Orland Central Dispatch.[5] (Facts, ¶ 56)

Tyco entered into Customer Contracts with all its Commercial Accounts in the Orland Territory to be monitored at Orland Central Dispatch.. (Facts, ¶¶ 57, 58)  Tyco currently remits monthly fees to Orland FPD for all of Tyco's Commercial Accounts.  (Facts, ¶ 59) There were approximately 650 Commercial Accounts located within the Orland Territory in 2014.  (Facts, ¶ 60)  All these Commercial Accounts either transmitted Signals by Direct Wire or via wireless radios supplied by Tyco.

In August, 2014, Orland FPD amended its Ordinance 2006-003 to remove the requirement that all Commercial Accounts in the unincorporated area of the Orland Territory must have their Signals received at Orland Central Dispatch. (Facts, ¶ 63)  However, at the request of the Orland FPD chief, the Village of Orland Park adopted an ordinance requiring that all Commercial Accounts in its Village send Signals only to a "remote supervisory station." (Facts, ¶ 64)  The Village of Orland Hills adopted an almost identical ordinance. (Facts, ¶ 65)

---

[5] Alarm, supervisory, and trouble signals (collectively "Signals") are the main types of signals generated by fire alarm systems.

LISLE\169634.7
ID\METH - 110623\000003

Both Villages designated Orland Central Dispatch as the only such facility allowed to receive Signals from Commercial Accounts in the Orland Territory. (Facts, ¶ 66)

As of December 30, 2014, Orland FPD still received Signals from Tyco's Commercial Accounts either via wireless transmitters (602) or Direct Wire (98), almost all of which were located in the two Villages. (Facts, ¶ 61) Those Accounts represented virtually all the Commercial Accounts in the Orland Territory. (Facts, ¶¶ 60, 61) Only 8-10 Commercial Accounts are located in the unincorporated areas of the Orland Territory. (Facts, ¶¶ 61, 61)

The term "remote supervising station"[6] referenced in the two Villages' ordinances is used in the national fire code (NFPA 72) and applies to numerous facilities operated by private alarm contractors, including Tyco, throughout the United States. (Facts, ¶¶ 67, 68) ADS's central station is certified as compliant with NFPA 72 and is recognized as a remote supervising station in over two hundred jurisdictions within northern Illinois. (Facts, ¶ 68) Other code compliant facilities are operated by many other private alarm contractors and third party monitoring facilities doing business in northern Illinois. *Id.*

**D. DU-COMM**

DU-COMM is "is a 'public agency' as defined Intergovernmental Cooperation Act, 5 ILCS 220/2 (1), that is voluntarily established by its members pursuant to Article VII, Section 10, of the Constitution of the State of Illinois, 1970. (Facts ¶ 73) DU-COMM is comprised of municipalities and fire protection districts. (Facts ¶ 74) DU-COMM was formed for the sole purpose of establishing a joint public safety communications system. (Facts, ¶ 75) Members pay fees to DU-COMM to cover all capital and operating costs. *Id.* DU-COMM entered into an

---

[6] The two Villages' use of "supervisory" rather than "supervising" in their ordinances seems to be an oversight.

9

Agreement with Tyco in 2014 granting Tyco certain exclusive rights (Facts, ¶¶ 73, 74)  This agreement provided *inter alia*: (1) Tyco was given the exclusive right to install, own, maintain and service all alarm signal receiving and processing equipment and systems located at the DU-COMM Communications Center and at Tyco-Covered Agencies; (2) Tyco equipment was to be used and operated for the purpose of receiving, processing, handling, responding to and dispatching from Signals originating from end users [Commercial Accounts] to a Tyco-Covered Agency and then retransmitted to DU-COMM[7]; and (3) Tyco agreed to pay DU-COMM a fee per end user of $14.00 per month. (Facts, ¶ 74)

### E. Tyco

Tyco is a licensed private alarm contractor under the Alarm Act that operates remote supervising stations meeting NFPA 72 standards. (Facts, ¶¶ 3, 69) Tyco makes millions of dollars each year from contractual arrangements with local governmental units like those it has had with Bloomingdale FPD, Lemont FPD, Orland FPD, and DU-COMM.  (Facts ¶¶ 13, 14) Tyco has such arrangements in more than fifty (50) local governmental units.  (Facts, ¶ 13)

## IV. DEFENDANTS ARE PRECLUDED FROM RAISING CERTAIN ARGUMENTS DUE TO JUDICIAL ESTOPPEL AND EXPRESS ADMISSIONS.

Given the backdrop of the *Lisle-Woodridge* cases, Tyco cannot simply ignore the issues it advanced and on which it prevailed, which the District Court and Seventh Circuit have already accepted in its rulings.  Tyco's admissions in the documents submitted with this Motion also preclude its contrary contentions now.  It is telling that the claims against Tyco here are based on the same legal underpinnings that Tyco relied on in *Lisle-Woodridge* cases.

---

[7] The Signals from Tyco's Commercial Accounts in the Bloomingdale Territory are sent to Bloomingdale Station #21 and then retransmitted to DU-COMM. (Facts, ¶ 33, 75)  The same arrangement occurred in Lisle-Woodridge until the Business there was dismantled.  *See* Modified Permanent Injunction Order, Compl., Dkt. 76-1, Exh. 1 (hereinafter "Order").

10

Judicial estoppel is a doctrine applied to prevent a party who actually prevails on a set of facts or legal issues in one case from advancing contrary positions in a second case. This doctrine binds Tyco and can in certain circumstances bind the other Defendants as well. The Seventh Circuit has held that the equities of a case may require holding a litigant accountable for positions taken by another party in a prior case in which the litigant was not a party, especially where both parties stand to benefit from a favorable decision in the current case. *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 796-97 (7th Cir. 2013); *see also New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

Though judicial estoppel is a flexible standard that is not reducible to a rote formula, courts consider several factors: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of the later inconsistent position would create the perception that either the first or second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 795 (quoting *New Hampshire*, 532 U.S. at 750-51).

Tyco prevailed on a number of central issues in *Lisle-Woodridge* which it now tries to avoid here as if these prior rulings have no effect. These positions go to the heart of many issues raised in the Motion and will be noted as they arise in the various sections of the argument below.

## V. DEFENDANTS' INVOLVEMENT IN FIRE ALARM MONITORING VIOLATES THE DISTRICT ACT.

The thrust of the Motion boils down to a simple proposition. Just as in *Lisle-Woodridge*, where all agreements and business relationships that perpetuated violations of the District Act

11

were enjoined and nullified, here Tyco, DU-COMM and Orland are illegally engaging in the Business in the three Territories.

### A.     The Districts Are Not Authorized to Engage in the Business.

*Lisle-Woodridge* clearly rejected the notion that a fire protection district could engage in any of the Illegal Acts. Fire protection districts are special districts that only have those powers expressly granted by the District Act and have no imputed or implied powers. 70 ILCS 705/0.01 *et seq*. Broad expressions of authority in the District Act thus did not confer on fire protection districts any express authority to engage in the Business. *ADT I* at 499. A fire protection district "does not have the authority [under the District Act] to displace the entire private market by requiring all customers to secure alarm signaling services and equipment from itself or just one private company." *ADT I* at 495; *ADT II* at 863 (finding that the fire protection district's requirements for alarm monitoring services were beyond the district's legal authority). It is noteworthy that the Seventh Circuit clearly refers to the "market" as being the boundaries of a district. *See also ADT II* at 860.

Although *ADT I* recognized that there was no prohibition on receiving Signals from fire alarm systems at a remote station operated by a fire protection district under the District Act, this did not allow the district to require only one type of transmission device and provider, collect fees, or control all the Business in the District. Here, Orland and DU-COMM are not simply receiving signals, but are instead engaged in the very conduct found to be illegal in *Lisle-Woodridge*.

Even express grants of authority are narrowly construed under the District Act. Faced with attempts by fire protection districts to extend their powers, courts have consistently rejected such efforts even as to activities that might appear consistent with the general mission of fire

12

protections districts. *ADT I* at 498 (as districts have no inherent powers, they "must be able to point out the statute which authorizes their acts.") (citations omitted); *Wilkes v. Deerfield-Bannockburn Fire Prot. Dist.*, 80 Ill. App.3d 327, 333-34 (2d Dist. 1979) (finding district's application of resources for ambulance services inconsistent with its primary duty to protect from fire)[8]; *Glenview Rural Fire Prot. Dist. v. Raymond,* 19 Ill. App.3d 272, 273-74, 277 (1st Dist. 1974) (enforcement of building codes adopted without express authority struck down). The Seventh Circuit thus found no basis for fire protection districts to be in the Business as fire alarm monitoring was not a "fire protection service" within the meaning of the District Act like firefighting. *ADT I* at 495, 499; *ADT II* at 858-862.

In *Lisle-Woodridge*, the Seventh Circuit also held that Commercial Accounts, not the district, were vested by the District Act with exclusive decision-making authority over transmission equipment. *ADT I* at 503. As the Seventh Circuit stressed, a fire protection district's relatively broad authority to regulate fire safety nevertheless gave it "little if any authority to step in [to] the competitive market for commercial fire alarm signaling and monitoring services." *ADT II* at 860. Thus, DU-COMM'S designation of Tyco as an exclusive provider and Orland FPD's mandating the use of transmitters provided by Tyco and otgher exclusive arrangements were illegal.

Neither DU-COMM nor Orland FPD has any authority to charge residents of any of the three Territories for fire alarm monitoring services. *See ADT II* at 874; Dkt. 237, at 29. The District Act grants very limited and specific authority to the Districts to only charge non-

---

[8] Specific areas of fire protection districts' powers have been expanded at times, but only after legislative action by the Illinois General Assembly. For example, in 1971, the legislature added section 22 (70 ILCS 705/22) to permit the operation of a general ambulance service if first approved by the voters in the district. *See Wilkes*, 80 Ill. App.3d at 333. The General Assembly has taken no such action regarding fire alarm monitoring.

13

residents for specified fire protection and ambulance services. 70 ILCS 705/14. As a fire protection district "cannot assess fees for fire alarm signaling and monitoring" (*ADT II* at 874), Lisle-Woodridge's collection of alarm monitoring fees was *ultra vires.* This ruling was extended to DU-COMM as well, as the Seventh Circuit expressly held that DU-COMM could not "assess such fees on the District's behalf." *Id.*[9] This Court has also noted DU-COMM lacks such authority.

As these prior cases have exhaustively analyzed the District Act, none of the actions challenged here can be said to fall under any authority granted to the Districts. Further, Districts must permit alternative means of connection between the premises of the Commercial Accounts and allowable monitoring facilities: "If competing equipment suppliers provide truly compatible alternatives, the District would not have statutory authority or reason to prohibit such alternatives." *ADT I* at 504. The District Court found that the AES transmitters used by ADS were identical to the Keltron transmitters used by Lisle-Woodridge. Order, p.13 at ¶ 35 Tyco uses these same Keltron transmitters to the exclusion of ADS's AES transmitters in the Orland Territory. (Facts, ¶ 54)

### B.   Orland FPD's Involvement in the Business, and Tyco's Agreement with Orland FPD, Are Illegal.

Notwithstanding the *Lisle-Woodridge* precedent, Orland continues to be engaged in the Business with its partner Tyco. However, it is undisputed that pursuant to the Orland/Tyco 2014 Agreement and the Villages' ordinances: (1) all Signals are received from Tyco's Commercial Accounts' alarm systems at Orland Central Dispatch; (2) Commercial Accounts must use the

---

[9] It should be noted that the Seventh Circuit did not resolve DU-COMM'S legal status, but had no difficulty finding that DU-COMM had no authority to collect fees from residents of Lisle-Woodridge. *Id.*

14

transmitters supplied by Tyco; and (3) Tyco collects fees from these Commercial Accounts, a portion of which are paid over to Orland FPD for monitoring. These acts are indistinguishable from those found to be illegal in *Lisle-Woodridge*.

This Court, following *ADT II*, held that ADS's allegations that Orland, through Tyco, charges fees to Orland residents and private alarm companies sufficiently allege a violation of the District Act. Dkt. 237, at 29-30. Those allegations are based on undisputed facts. This Court also held that allegations that Orland requires a specific type of transmission equipment which ADS is required to purchase from Tyco, if true, would be a violation of the District Act. See Dkt. 237, at 28-29 (requirement by Orland for private alarm companies to purchase transmitters from Tyco would be violation of District Act). Those allegations are also now undisputed facts.

Once Orland FPD exceeded its authority, the Orland/Tyco 2014 Agreement was tainted by such behavior and rendered invalid. *Ill. St. Bar Ass'n Mutual Ins. Co. v. Coregis Ins. Co.*, 355 Ill.App.3d 156, 164 (1st Dist. 2004) (act exceeding authority of local government entity voids any contract undertaken pursuant to the absent authorization; such contracts are *ultra vires* and thus *void ab initio*.). Contracts which are legally prohibited are void. *Ad-Ex, Inc. v. Chicago*, 207 Ill. App.3d 163, 172 (1st Dist. 1990). A municipal contract which is illegal or beyond the authority of a municipality is "absolutely void" and cannot be ratified by later municipal action. *McMahon v. City of Chicago*, 789 N.E.2d 347, 352 (1st Dist. 2003); *Kelley v. Chi. Park Dist.*, 635 F.3d 290, 307-308 (7th Cir. 2011); 70 ILCS 1205/4-1, *et seq.*; *see also Hesbol v. Bd. of Educ. of Laraway Cmty. Consol. Sch. Dist. 70-C*, 14 F. Supp. 3d 1101, 1106 (N.D. Ill. 2014). A contract that is void *ab initio* is treated as though it never existed. *Ill. State Bar Ass'n*, 355 Ill. App.3d at 164. Assignments of such contracts are ineffective unless the contracts themselves are

15

legal and the assignor has an assignable right. *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 387-90 (1st Dist. 2004).

This Court ruled that ADS could not challenge the legality of the Subscriber Agreements as it did not have standing in its decision on the motions to dismiss. **CITE** The contracts being challenged here are between Tyco and Orland FPD or Tyco and DU-COMM. Moreover, the orders affirmed in *ADT I* and *ADT II* voided both the agreements between Lisle-Woodridge and Chicago Metro and Lisle-Woodridge and its subscribers.

**C. DU-COMM Has No Authority under the District Act or its Statutory Mandate to Engage in Fire Alarm Monitoring or Collect Fees.**

As noted above, DU-COMM derives its authority from the Illinois Constitution and the Intergovernmental Agreement Act. While the members of DU-COMM are units of local government as defined in Article VII, Section 1, of the Constitution of the State of Illinois, DU-COMM is not such a unit of local government. Rather, its status is more restrictive than special districts like fire protection districts under the District Act. DU-COMM is merely an agency of intergovernmental cooperation. It was formed exclusively to engage in public safety communications (911 functions) for its members.

DU-COMM has no grant of authority for fire alarm monitoring, for entering into an exclusive contract with Tyco, or for the collection of fees. On the contrary, DU-COMM is only authorized to collect fees from its members. Neither the DU-COMM formation agreement among its members nor its Bylaws has any provision for fire alarm monitoring or collection of fees. Rather, the only subject of these documents is public safety communications; i.e., 911 dispatching functions.

LISLE\169634.7
ID\METH - 110623\000003

### 1. DU-COMM Cannot Be Delegated Powers That Its Fire Protection District Members Do Not Have.

Just as fire protection districts cannot engage in the Business, so too fire protection districts cannot transfer the Business to DU-COMM in an effort to circumvent such limitations. Even if DU-COMM could point to a statutory grant of authority as the basis for its existence as an entity separate from its members, that status cannot give it authority to act in a manner that is greater than the authority of its affected member district. Thus, member Bloomingdale FPD cannot vest in DU-COMM any more authority than Bloomingdale FPD has. Once *ADT II* was decided, Bloomingdale FPD was effectively stripped of all authority to be in the Business, a legal conclusion that was acknowledged in admissions made by both Bloomingdale FPD and Tyco at the time the District exited the Business. Having done so, Bloomingdale cannot confer upon DU-COMM authority to engage in the Business it does not itself enjoy.

### 2. Bloomingdale FPD and the Other Fire Protection Districts Did Not Have the Authority to Create DU-COMM as an Independent Legal Entity.

DU-COMM previously claimed that it was an "independent legal entity" separate from its members. (Dkt. 115, at p. 3). Without reaching that conclusion, this Court found that DU-COMM had the capacity to be sued (see Dkt. 142). Such capacity does not establish either DU-COMM'S legal status or whether DU-COMM has the authority or licensing necessary to engage in the Business at the request of its fire protection district members, to enter into exclusive agreements with Tyco, or to collect fees from residents in the Bloomingdale Territory. Agencies like DU-COMM formed under the Intergovernmental Agreement Act can be sued regardless of the fact they have no independent legal status. *See Maltby v. Winston*, 36 F.3d 548,551(7th Cir. 1994) (multi-jurisdictional task force).

Even a cursory review of the DU-COMM formation document shows that the forming units of government did not purport to establish a separate legal entity, assuming they had such power:

> 1. Venture Established. Pursuant to the joint powers authorization of the Illinois Constitution, the undersigned do hereby federate together in a co-operative venture for the joint and mutual operation of a centralized public safety communications system, to be known as "DuPage Public Safety Communications" (hereinafter DU-COMM) which shall consist of all of the local governments signatory hereto (and also those local governments which may hereinafter become signatory hereto).

Instead, the members formed a "cooperative venture" consisting "of all the local governments signatory" and described it as "joint and mutual." There is simply no independent statutory grant of specific authority that could establish a separate legal entity called DU-COMM. On the contrary, the only remotely related statutory grant deals with the 911 function. Legislation authorizing the 911 function does not create any separate governmental units to perform this function. 50 ILCS 750/0.01 *et seq*. Rather, the performance of 911 functions has been delegated to police and fire departments in many municipalities by express statutory grants. 50 ILCS 750/1. These departments are not legal entities separate and apart from their respective municipalities or members. *See Hall v. Vill. of Flossmoor Police Dep't*, 2012 U.S. Dist. LEXIS 13311, 5 (N.D. Ill. Feb. 1, 2012). .

### 3. *Fire Protection Districts Cannot Accomplish by an Intergovernmental Agreement What They Are Not Already Statutorily Empowered to Do.*

While allowing joint ventures such as DU-COMM, the Illinois Intergovernmental Cooperation Act ("IICA") does not provide an independent source of authority for local governmental units to give separate legal status to DU-COMM. 5 ILCS 220/3 On the contrary, a

18

LISLE\169634.7
ID\METH - 110623\000003

local governmental unit cannot accomplish through an intergovernmental agreement what it cannot accomplish through its own independent authority. *Lisle v. Woodridge*, 192 Ill. App.3d 568, 576-77 (2d Dist. 1989). Similarly, creating a public agency providing 911 functions like DU-COMM does not create a unit of local government. *See Opal v. Cencom E 911*, 1994 US. Dist. LEXIS 3536 at 24 (N.D. Ill, 1994)

The Attorney General has stated that a local governmental unit cannot avoid the limitations on its powers simply by entering into an intergovernmental agreement with a more empowered entity. Op. Att'y Gen. (Ill.) No. 05-010 at 21.[10] The IICA is not a grant of authority "to undertake jointly functions that the cooperating entities cannot undertake individually." *Id.* The District Act certainly does not have any such express authorization to form a separate legal entity. Nonetheless, DU-COMM has been monitoring in the Bloomingdale Territory and collecting fees, first from Bloomingdale FPD and then from Tyco.

Just as DU-COMM could not collect fees from Lisle-Woodridge, it similarly cannot collect fees in the Bloomingdale Territory. *See ADT II* at 874. DU-COMM simply cannot contract with Tyco to engage in conduct that its member agency, Bloomingdale FPD, could not have undertaken on its own. See *Coregis Ins. Co.,* 355 Ill. App.3d at 164 (citing *Grassini*, 279 Ill. App. 3d at 620) (stating that where a township exceeds its statutory authority in entering into a contract, the township's act is *ultra vires* and the resulting contract is void *ab initio*).

### D.    Defendants Have Been Unjustly Enriched to ADS's Detriment.

Defendants have profited from their Illegal Acts by reaping fees from Commercial Accounts that Defendants were never authorized to receive. Defendants were only able to

---

[10] See Dkt. 133-1, Exh. 2; also available online at:
http://illinoisattorneygeneral.gov/opinions/2005/05-010.pdf.

procure this benefit through violations of the District Act or other state statutes. By unjustly retaining fees paid by Commercial Accounts pursuant to Subscriber Agreements and Customer Contracts, Defendants prevented ADS from competing for the Business in the Orland Territory and from effectively competing for the Business in the Bloomingdale and Lemont Territories. *See HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 161-62 (1989) (recognizing that a defendant's retention of a benefit would be unjust where the defendant procured the benefit from a third party through wrongful conduct); *see also Nat'l Union Fire Ins. Co. v. DiMucci*, 2015 IL App (1st) 122725, ¶ 72, 393 Ill. Dec. 495, 516 (upholding grant of summary judgment in case involving benefit transferred by a third party to defendant). Defendants have been unjustly enriched and should not be permitted to retain the fees they unlawfully received.

## VI. <u>CONCLUSION</u>

There are no material issues of fact that each of the Defendants is illegally engaged in the Business in contravention of the District Act or other statutory authority. These activities included: establishing Businesses involving sole suppliers of transmission equipment (Orland Territory); monitoring at only one specified location (Orland Territory); exclusive contracts (Orland FPD and DU-COMM); and the collection of fees (Orland FPD and DU-COMM). All these activities were Illegal Acts that Tyco established in *Lisle-Woodridge*. Transferring these activities to Tyco did not legitimize these Businesses in the Bloomingdale or Lemont Territories. Orland FPD's exclusive arrangements with Tyco are similarly unlawful. Moreover, the payment of fees to Orland FPD and DU-COMM for monitoring merely compounds the illegal conduct. ADS is entitled to an entry of partial summary judgment and a declaratory judgment that all three sets of arrangements were

illegal from inception and Tyco's current contracts with Orland FPD and DU-COMM are similarly illegal.

| Dated: October 15, 2015 | Respectfully submitted: <br> By: Bruce L. Goldsmith <br><br> Bruce L. Goldsmith – ARDC No. 0996939 <br> David J. Bressler – ARDC No. 6182549 <br> Molly E. Thompson – ARDC NO. 6293942 <br> Kara B. Murphy - ARDC No. 6309748 <br> DYKEMA GOSSETT PLLC <br> 4200 Commerce Court, Suite 300 <br> Lisle, Il 60532 <br> 630-245-0400 <br><br> *Attorneys for Alarm Detection Systems, Inc.* |
| --- | --- |

21

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 15, 2015, he caused the foregoing Memorandum of Law in Support of its Motion for Partial Summary Judgment to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties to this action via their counsel of record at their e-mail addresses on file with the Court.

/s/ Bruce L. Goldsmith

Bruce L. Goldsmith – ARDC No. 0996939
David J. Bressler – ARDC No. 6182549
Molly E. Thompson – ARDC NO. 6293942
Kara B. Murphy - ARDC No. 6309748
DYKEMA GOSSETT PLLC
4200 Commerce Court, Suite 300
Lisle, Il 60532
630-245-0400

LISLE\169634.7
ID\METH - 110623\000003