UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALARM DETECTION SYSTEMS, INC., | |
| Plaintiff, | |
| v. | No. 14 C 876 |
| ORLAND FIRE PROTECTION DISTRICT; TYCO INTEGRATED SECURITY, LLC; and DuPAGE PUBLIC SAFETY COMMUNICATIONS, | Judge Thomas M. Durkin |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Alarm Detection Systems, Inc. is a company that provides fire alarm services to commercial and multi-unit residential buildings. *See* R. 245 ¶¶ 1, 11. Alarm Detection alleges that Orland Fire Protection District ("Orland FPD"), Tyco Integrated Security, LLC ("Tyco"), and DuPage Public Safety Communications ("Du-Comm"), provide certain fire alarm services and equipment in violation of Illinois's Fire Protection District Act, 70 ILCS 705 (Counts XIII-XV), the Sherman and Clayton Acts (Counts I-IX), and the Equal Protection and Due Process Clauses of the Fourteenth Amendment (Counts X-XII). Alarm Detection also seeks relief against Defendants for unjust enrichment (Count XVI).

Alarm Detection filed a 14-count amended complaint on May 16, 2014. *See* R. 76. Orland FPD and Tyco (and other defendants no longer in the case) filed motions to dismiss. Alarm Detection also sought a preliminary injunction, and the parties

had discovery relevant to that motion and in an attempt to settle the case. Based on that discovery Alarm Detection filed a motion for summary judgment on its claims for violation of Illinois's Fire Protection District Act, 70 ILCS 705 (the "District Act"). *See* R. 221. The Court granted Defendants' motions to dismiss 11 of the 14 counts in Alarm Detection's amended complaint, leaving three counts against Orland FPD and Tyco for violation of the District Act and Sections 1 and 2 of the Sherman Act. *See* R. 237 (*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 129 F. Supp. 3d 614 (N.D. Ill. 2015)) (the "September 8 Order").

Alarm Detection has now filed a 16-count second amended complaint, re-pleading all of the claims against Orland FPD and Tyco from its prior complaint, plus two additional counts, and adding claims against Du-Comm. *See* R. 245. Alarm Detection also filed an amended motion for summary judgment on its District Act claims and its unjust enrichment claims to the extent they rely on violation of the District Act. *See* R. 246. The remaining defendants—Orland FPD, Tyco, and Du-Comm—filed cross-motions for summary judgment on the District Act and unjust enrichment claims, *see* R. 270; R. 278; R. 280, and motions to dismiss all the claims in the second amended complaint for failure to state a claim, *see* R. 268; R. 275; R. 276. For the following reasons, Defendants motions for summary judgment on the District Act claims (Counts XIII-XV, and the relevant parts of Count XVI) are granted, and Alarm Detection's motion for summary judgment on those claims is denied. Additionally, Defendants' motions to dismiss Alarm Detection's other claims are granted in part and denied in part as follows: the antitrust claims against Tyco

and Du-Comm for their actions in the Bloomingdale Fire Protection District's territory (Counts I, IV, and VIII) are dismissed; the antitrust claims for a declaratory judgment that the agreement between Tyco and Lemont Fire Protection District is unlawful (contained within Counts II, V, and VII) are dismissed; the Fourteenth Amendment and unjust enrichment claims against Du-Comm and Tyco for their actions in the Bloomingdale Fire Protection District's territory (Count X and the relevant parts of Count XVI) are dismissed; the Fourteenth Amendment claim against Orland FPD and Tyco for their actions in the Orland FPD's territory (Count XII) is dismissed; the Fourteenth Amendment claim against Orland FPD and Tyco for their actions in the Lemont Fire Protection District's territory (Count XI) survives; the unjust enrichment claims against Orland FPD and Tyco for their actions in the Orland and Lemont territories (the relevant parts of Count XVI) survive; and the antitrust claims against Tyco and Orland FPD for their actions in the Orland and Lemont territories (Counts II, III, V, VI, VII, and IX) survive.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

By contrast, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Analysis**

In its September 8 Order, the Court included a detailed discussion of the relevant background facts and case law, which the Court will not repeat here. *See* R. 237 (*Alarm Detection*, 129 F. Supp. 3d 614). The Court will address the new allegations Alarm Detection makes in its second amended complaint, as well as any other new facts appropriately considered on the motions now before the Court, in the course of the following analysis.

## I.     The District Act (Counts XIII, XIV, and XV)

Alarm Detection argues that the District Act does not authorize fire protection districts like Orland FPD, or other entities that act on their behalf like Tyco and Du-Comm, to engage in fire alarm "monitoring for fees." R. 247 at 2. Alarm Detection alleges that Du-Comm and Tyco illegally monitor fire alarms within the Bloomingdale Fire Protection District's territory in accordance with contracts Du-Comm and Tyco have with Bloomingdale FPD. Alarm Detection also alleges that Orland FPD and Tyco illegally monitor fire alarms within the Lemont Fire Protection District's territory in accordance with contracts Orland FPD and Tyco have with Lemont FPD. Finally, Alarm Detection alleges that Orland FPD and Tyco illegally monitor fire alarms within Orland FPD's territory.[1]

In the September 8 Order, the Court held that Bloomingdale FPD and Lemont FPD had the authority under the District Act to assign subscriber agreements to Tyco, and for that reason dismissed Alarm Detection's claims for

---

[1] Bloomingdale FPD and Lemont FPD were defendants in this case and were dismissed after settling with Alarm Detection. *See* R. 177; R. 211.

5

violation of the District Act from its first amended complaint. Unlike its first amended complaint, Alarm Detection's claims for violation of the District Act in its second amended complaint allege that Defendants violate the District Act by charging certain fees. It is unnecessary, however, for the Court to address whether Alarm Detection's substantive allegations state a claim for violation of the District Act because the Court agrees with the argument put forward by Orland FPD that the District Act does not provide a private alarm company like Alarm Detection a private right of action to challenge Defendants' authority to engage in fire alarm monitoring activities.

Orland FPD argues that Alarm Detection "lacks standing [to bring] its District Act claims because there is no private right of action under the Act." R. 271 at 10. As Orland FPD goes on to explain, however, this argument is not about constitutional standing under Article III, but contends that the "District Act does not expressly [or impliedly] grant [Alarm Detection] a right to judicial relief." *Id.* at 11; *see HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 796 (7th Cir. 2015) ("To the extent the argument is framed in terms of prudential or statutory standing, the Supreme Court clarified in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, that whether a particular plaintiff has a cause of action under a statute no longer falls under the rubric of standing." (citing 134 S. Ct. 1377, 1387 n.4 (2014))). Thus, this argument is analyzed under the rubric of a motion for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), as opposed to a motion for lack of standing pursuant to Rule 12(b)(1).

With respect to an argument such as the one Orland FPD makes here, the "judicial task is to interpret the statute . . . to determine whether it displays an intent to create . . . a private right [and] a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87.

In determining whether a statute provides a private right of action, courts first examine the statute's express language. *See Metzger v. DaRosa*, 805 N.E.2d 1165, 1167-68 (Ill. 2004). "In construing the meaning of a statute, the primary objective of [the] court is to ascertain and give effect to the intention of the legislature, and all other rules of statutory construction are subordinated to this cardinal principle." *Id.* at 1167. "The plain language of the statute is the best indicator of the legislature's intent." *Id.*

Here, the District Act expressly provides for the following private rights of action: petitions regarding consolidation, dissolution, growth or contraction of fire protection districts, 70 ILCS 705/14.02, 14.14, 15a, 15b, 16, 16a, 16c, 18, 19, 19a, 20, 20a, 21, 21.1; and actions pursuant to the Administrative Review Law, 735 ILCS 5/3-101, regarding labor and employment disputes, 70 ILCS 705/16.13b. None of these express provisions give Alarm Detection a right to bring the action it has brought under the District Act in this case.

"The lack of specific statutory language granting such a right, however, is not necessarily dispositive because a court may determine that a private right of action

7

is implied in a statute." *Metzger*, 805 N.E.2d at 1168. Illinois courts imply a cause of action under the following conditions: "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violation of the statute." *Id.* at 1168 (quoting *Fischer v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117-18 (Ill. 1999)). A court, however, "should use caution in implying a private right of action, because, in doing so, it is assuming the policy-making authority more appropriately exercised by the legislature." *Helping Others Maintain Environmental Standards v. Bos*, 941 N.E.2d 347, 364 (Ill. App. Ct. 2d Dist. 2010).

"[W]hile it is true that Illinois courts routinely find implied private rights of action in statutes, such private rights of action are commonly found in statutes that also provide for specific criminal or administrative penalties." *Cabrini-Green Local Advisory Council v. Chi. Hous. Auth.*, 1997 WL 31002, at *18 (N.D. Ill. Jan. 22, 1997). To the extent the District Act provides for any such penalties, they are not at issue in this case. Furthermore, many courts examining regulatory or enabling legislation akin to the District Act have found that such legislation does not imply a private right of action. *See, e.g.*, *Metzger*, 805 N.E.2d 1165 (no implied private right of action for whistleblower plaintiff under the Illinois Personnel Code); *Fischer*, 722 N.E.2d 1115 (no implied private right of action for nursing home employees who were retaliated against by their employer under the Nursing Home Care Act);

*Collins v. Bd. of Educ. of N. Chi. Cmty. Unit Sch. Dist.*, 792 F. Supp. 2d 992, 1000 (N.D. Ill. 2011) ("[T]he purpose of the School Code is not to redress individual wrongs, but to provide for the education of public school students."); *Markos v. Chi. Park Dist.*, 2002 WL 1008459, at *5 (N.D. Ill. May 13, 2002) ("[T]he court held the Chicago Park District Act was an enabling act that could not create an implied private right of action."); *Cabrini-Green*, 1997 WL 31002, at *18 (no implied cause of action under the Illinois Housing Authorities Act); *Helping Others*, 941 N.E.2d at 362-65 (no implied private right of action under the Livestock Act); *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, at *6-9 (Ill. App. Ct. 1st Dist. Apr. 8 2016) (no implied private right of action under the Cemetery Care Act). Thus, even without applying the factors relevant to determining whether a statute provides for an implied right of action to the District Act, case authority indicates that the District Act is not the type of legislation that usually provides for a private right of action under Illinois law.

Turning now to the relevant factors, the Court begins with the statement of purpose the legislature included in the first section of the District Act, which provides that it was enacted to provide for the creation of fire protection districts so that they can "engage in the acquisition, establishment, maintenance and operation of fire stations, facilities, vehicles, apparatus and equipment for the prevention and control of fire therein and . . . provide as nearly adequate protection from fire for lives and property within the districts as possible and regulate the prevention and control of fire therein." 70 ILCS 705/1. The District Act gives fire protection districts

"the express power to adopt and enforce fire prevention codes and standards," 70 ILCS 705/11, "the powers to buy or lease firefighting equipment, employ firefighters, and impose civil fines for setting false fire alarms, 70 ILCS 705/6, as well as the authority to tax district residents to pay for the fire protection services in the district. 70 ILCS 705/14." *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 495 (7th Cir. 2012). These provisions show that the statute's "underlying purpose" is to "benefit" residents of a certain geographic area by enabling the creation of fire protection districts to protect the residents from fire. There is no indication in the statute's language that it is designed to provide a remedy for injury to commercial interests like those Alarm Detection raises here. Since the statute's construction does not anticipate that the statute's violation will cause injuries like those Alarm Detection seeks to remedy, it is inappropriate to imply such a private right of action in this case.

Generally, the statute does not provide that technical violations of the its provisions result in any injury at all, let alone an injury that inhibits the statute's underlying purpose. There is some authority, however, that individual *residents* of a fire protection district have a private right of action under the District Act. The statute was clearly designed to "benefit" residents of fire protection districts, and to the extent that a violation of the District Act increases the chance of fire damage to a resident's health or property a private right of action might exist. Further, the District Act includes a number of provisions granting fire protection districts the authority to tax residents. The Court has found a few older cases in which residents

sued fire protection districts regarding taxes, although these cases did not directly address the question of the existence of a private right of action under the statute. *See People ex rel. Kelly v. Lund*, 185 N.E.2d 174 (Ill. 1962); *People ex rel. Larson v. Thompson*, 35 N.E.2d 355 (Ill. 1941). It is true that Alarm Detection claims that Defendants are liable for taxes and fees that violate the District Act, but Alarm Detection has not alleged that it is a *resident* of any of the fire protection districts at issue in this case, or that it has been *injured* by being required to pay such taxes. Moreover, in the two cases the Court cited in which individuals participated as plaintiffs, the claims were brought by county officials—the State's Attorney in *Kelly*, and the County Collector in *Larson*—on behalf of tax payers. *See also People ex rel. Armstrong v. Huggins*, 94 N.E.2d 863 (Ill. 1950) (state's attorney, on behalf of individual tax payer, challenged provisions of the District Act that supported appointment of certain individuals to the fire protection district's board). To the extent these cases provide a mechanism for individuals to make claims about the propriety of taxes and fees imposed under the District Act, the cases do not support Alarm Detection's claim to a private right of action under the statute. Not only is Alarm Detection not included in the class of plaintiffs who could challenge taxes levied pursuant to the District Act, the relevant authority indicates that such a claim must be brought by or in conjunction with the government.

The Court has found a number of other cases involving fire protection districts, but none that support the private right of action for violation of the District Act that Alarm Detection brings in this case. The vast majority of the cases

the Court has found concern the express causes of action discussed earlier regarding

creation, expansion or contraction of fire protection districts,[2] or employment

issues.[3] Other cases involving tort or contract claims brought by or against a fire

protection district, did not concern the provisions of the District Act.[4] Sometimes

---

[2] *See In re Village of Hanover Park*, 727 N.E.2d 660 (Ill. App. Ct. 2d Dist. 2000); *Rutland & Dundee Townships Fire Prot. Dist. v. Village of West Dundee*, 790 N.E.2d 860 (Ill. App. Ct. 2d Dist. 2003); *In re Petition to Disconnect Certain Territory from Rutland & Dundee Townships Fire Prot. Dist.*, 714 N.E.2d 592 (Ill. App. Ct. 2d Dist. 1999); *In re Petition to Disconnect Certain Territory from Frankfort Fire Prot. Dist.*, 656 N.E.2d 434 (Ill. App. Ct. 3d Dist. 1995); *In re Gilman Cmty. Fire Prot. Dist.*, 707 N.E.2d 714 (Ill. App. Ct. 3d Dist. 1999); *Petition of Village of Vernon Hills*, 637 N.E.2d 1240 (Ill. App. Ct. 2d Dist. 1994), *aff'd,* 658 N.E.2d 365 (Ill. 1995); *E. Side Fire Prot. Dist. v. City of Belleville*, 582 N.E.2d 755 (Ill. App. Ct. 5th Dist. 1991); *Oak Grove Fire Prot. Dist. v. Village of Bartonville*, 577 N.E.2d 890 (Ill. App. Ct. 3d Dist. 1991); *Leyden Fire Prot. Dist. v. Village of Bensenville*, 502 N.E.2d 370 (Ill. App. Ct. 1st Dist. 1986); *People ex rel. Freeport Fire Prot. Dist., Stephenson Cty. v. City of Freeport*, 412 N.E.2d 718 (Ill. App. Ct. 2d Dist. 1980); *Downers Grove Estates Fire Prot. Dist. v. Village of Downers Grove*, 408 N.E.2d 761 (Ill. App. Ct. 2d Dist. 1980); *Matter of Carol Stream Fire Prot. Dist.*, 361 N.E.2d 867 (Ill. App. Ct. 2d Dist. 1977); *Matter of Town of Normal*, 336 N.E.2d 212 (Ill. App. Ct. 4th Dist. 1975); *Winfield Fire Prot. Dist. v. City of Wheaton*, 332 N.E.2d 43 (Ill. App. Ct. 2d Dist. 1975); *People v. Heizer*, 223 N.E. 2d 128 (Ill. 1967).

[3] *Pedersen v. Village of Hoffman Estates*, 8 N.E.3d 1083 (Ill. App. Ct. 1st Dist. 2014); *Lynd v. Bristol Kendall Fire Prot. Dist.*, 2012 WL 3069391, at *1 (N.D. Ill. July 26, 2012); *Doering v. Bd. of Trustees of Dunlap Cmty. Fire Prot. Dist.*, 2012 WL 1533349, at *1 (C.D. Ill. Apr. 11, 2012), *report and recommendation adopted,* 2012 WL 1533512 (C.D. Ill. Apr. 30, 2012); *Gaffney v. Bd. of Trustees of Orland Fire Prot. Dist.*, 969 N.E.2d 359 (Ill. 2012); *Lynd v. Bristol Kendall Fire Prot. Dist.*, 2015 WL 5162742, at *1 (N.D. Ill. Sept. 2, 2015); *Basek v. Tri-State Fire Prot. Dist.*, 69 F. Supp. 3d 845 (N.D. Ill. 2014); *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490 (7th Cir. 2010); *City of Bloomington v. Illinois Labor Relations Bd., State Panel*, 871 N.E.2d 752 (Ill. App. Ct. 4th Dist. 2007); *Mathias v. Addison Fire Prot. Dist. No. 1*, 43 F. Supp. 2d 916 (N.D. Ill. 1999); *Phillips v. Darien-Woodridge Fire Prot. Dist.*, 1995 WL 461909, at *1 (N.D. Ill. Aug. 2, 1995); *Quinones v. City of Evanston*, 1992 WL 168952, at *1 (N.D. Ill. July 15, 1992); *Ekkert v. City of Lake Forest*, 588 N.E.2d 482 (Ill. App. Ct. 2d Dist. 1992); *Jakubec v. Bloomingdale Fire Prot. Dist. No. 1*, 493 N.E.2d 717 (Ill. App. Ct. 2d Dist. 1986).

[4] *Coleman v. E. Joliet Fire Prot. Dist.*, 46 N.E.3d 741 (Ill. 2016); *York Ctr. Fire Prot. Dist. v. Kubiesa, Spiroff, Gosselar & Acker, P.C.*, 872 N.E.2d 1077 (Ill. App. Ct. 2d

fire protection districts bring actions to enforce fire code ordinances that were passed under the authority of the District Act.[5] But again, these lawsuits do not implicate the provisions of the District Act itself, and they directly implicate the pecuniary interests of residents of the fire protection district who are obligated to comply with the fire code. Alarm Detection's allegations are not analogous to any of these claims.[6]

Alarm Detection's primary argument that a private right of action exists under the District Act is that it successfully sued the Lisle-Woodridge Fire Protection District for violations of the District Act, and the district court's rulings against Lisle Woodridge were affirmed in relevant part by the Seventh Circuit. *See ADT Security Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 724 F.3d 854 (7th Cir. 2013); 672 F.3d 493 (7th Cir. 2012). The Court has reviewed the pleadings in the district court and the Seventh Circuit and no party appears to have questioned whether the District Act provides a private right of action for Alarm Detection.

---

Dist. 2007); *Elk Grove Twp. Rural Fire Prot. Dist. v. Village of Mount Prospect*, 592 N.E.2d 549 (Ill. App. Ct. 5th Dist. 1992); *Am. Alternative Ins. Co. v. Lisle-Woodridge Fire Prot. Dist.*, 2014 WL 2601675 (Ill. App. Ct. 2d Dist. June 9, 2014).

[5] *Orland Fire Prot. Dist. v. Intrastate Piping & Controls, Inc.*, 637 N.E.2d 641 (1st Dist. 1994); *Wauconda Fire Prot. Dist. v. Stonewall Orchards, LLP*, 828 N.E.2d 216 (Ill. 2005); *Glenview Rural Fire Prot. Dist. v. Raymond*, 311 N.E.2d 302 (Ill. App. Ct. 1st Dist. 1974).

[6] In *Wilkes v. Deerfield-Bannockburn Fire Protection District*, the court discussed whether a fire protection district had the "authority to operate an ambulance service without first receiving approval by referendum pursuant to section 22 of the Act." 399 N.E.2d 617, 620 (Ill. App. Ct. 2d Dist. 1979). The plaintiffs in *Wilkes* were firemen who primarily sought to force the fire protection district to pay salaries during temporary disciplinary suspensions. The court did not discuss whether the firemen had a private right of action to challenge the ambulance service. But in any case, a private fire alarm services company like Alarm Detection is not similarly situated to the individual firemen in *Wilkes*.

"Unexamined assumptions of prior cases do not control the disposition of a contested issue." *Stanek v. St. Charles Comm. Unit Sch. Dist.*, 783 F.3d 634, 640 (7th Cir. 2015); *see also United States v. Davis*, 793 F.3d 712, 719 (7th Cir. 2015) ("We recognize that an opinion disregarding an issue, even a jurisdictional one, does not establish a holding."); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91 (1998) ("The short of the matter is that the jurisdictional character of the elements of the cause of action in *Gwaltney* made no substantive difference (not even any procedural difference that the Court seemed aware of), had been assumed by the parties, and was assumed without discussion by the Court. We have often said that drive-by jurisdictional rulings of this sort . . . have no precedential effect."). Thus, the Seventh Circuit's rulings in *Lisle-Woodridge* do not constitute a holding that the District Act provides a private right of action for Alarm Detection.

Alarm Detection also argues that Tyco is judicially estopped from arguing that there is no private right of action under the District Act, because Tyco was Alarm Detection's co-plaintiff in the *Lisle-Woodridge* case and benefited from the ruling that Lisle-Woodridge violated the District Act. Judicial estoppel "may be applied only where a clearly inconsistent position is taken" in earlier litigation, and where "the party to be estopped [successfully] convinced the court to accept its position in the earlier litigation" *Matter of Cassidy*, 892 F.2d 637, 461 (7th Cir. 1990). As the Court just noted, the issue of statutory standing under the District Act was never raised in the *Lisle-Woodridge* case, so Tyco never expressly argued that it had a private right of action. Tyco could not have won an argument it never

14

made. The Court cannot find that Tyco is judicially estopped from raising statutory standing as a defense.

Moreover, even if Tyco can be said in some sense to have prevailed on the implicit contention that alarm companies have a private right of action under the District Act, the Court would not exercise its discretion to prevent Tyco from benefiting from a contrary ruling here because there is no basis to contend that its co-defendants, Orland FPD or Du-Comm, should be estopped from prevailing on such an argument. *See id.* at 642 ("Estoppel is an equitable concept, and its application is therefore within the court's sound discretion."). Additionally, there is no indication that Tyco intended or intends to deceive the Court, which is generally necessary for application of judicial estoppel. *See Matthews v. Potter*, 316 Fed. App'x 518, 522 (7th Cir. 2009) ("The doctrine is generally invoked to prevent a party from asserting positions in successive judicial proceedings that are so 'clearly inconsistent' that accepting the latter position would create the perception that at least one of the courts was misled."). Rather, Tyco benefited in the *Lisle-Woodridge* action from the defendant's failure to raise what might have been a meritorious affirmative defense. Under these circumstances, it would be unjust for the Court to dismiss Alarm Detection's claims against Orland FPD and Du-Comm based on a certain argument but deny that rationale to Tyco. Unlike in the *Lisle-Woodridge* case, Defendants here have raised statutory standing as a basis to dismiss Alarm Detection's District Act claims and the Court's application of the law on that subject should apply to all similarly situated defendants.

Therefore, summary judgment is granted in Defendants' favor on Alarm Detection's claims for violation of the District Act (Counts XIII, XIV, and XV) and those claims are dismissed.

## II.    The Sherman & Clayton Acts

The Court reviewed the elements of claims under the Sherman and Clayton Acts in its September 8 Order, which it will not repeat here. The following reasoning and holdings should be read light of the September 8 Order.

### A.    Tyco and Du-Comm in Bloomingdale (Counts I, IV, and VIII)

As the Court recounted in its September 8 Order, in 2005 Bloomingdale FPD enacted an ordinance requiring commercial fire alarm service customers to lease wireless fire alarm transmitters from Bloomingdale FPD, and to enter into service contracts for those transmitters with Bloomingdale FPD. After the Seventh Circuit's decision in the *Lisle-Woodridge* case, Bloomingdale FPD sought to exit the fire alarm service business. To that end on January 9, 2014, Bloomingdale FPD sold Tyco its fire alarm equipment and the right to fulfill Bloomingdale FPD's obligations under its customer contracts, with the understanding that the subscribers were free to leave those contracts and enter into contracts with any private alarm company.

Prior to Bloomingdale FPD's deal with Tyco, Bloomingdale FPD had entered into a contract with Du-Comm on January 3, 2013, "to have Du-Comm take over the 911 dispatch functions and fire alarm monitoring of Commercial Accounts." R. 245 ¶ 60. After Tyco's agreement with Bloomingdale FPD, Tyco also reached an

agreement with Du-Comm on March 1, 2014. *See* R. 245-4 at 42-55. In that agreement, "Du-Comm grants to Tyco the exclusive right to install, own, maintain and service all alarm signal receiving and processing equipment and systems located at the Du-Comm Operations Center and the Tyco-Covered Agencies." *Id.* at 43 (§ 3.1). The Tyco-Covered Agencies are "twenty-two (22) fire agencies and seventeen (17) police agencies," *id.* at 42, that are obligated under Tyco's agreement with Du-Comm to "satisfy Tyco's reasonable service application criteria" and to "enter into a satisfactory written contract with Tyco." *Id.* at 44 (§ 4.3). The agreement also provides that "the Du-Comm operations Center may receive, process, handle, respond to, and dispatch alarm signals received from Member Departments that are not a Tyco-Covered Agency (a 'Non-Participating Member Department')." *Id.* at 44 (§ 3.3). "In such event, such Non-Participating Member Department alarm signals shall not be routed through the Tyco Equipment." *Id.* "Non-Participating Member Departments" are also exempt from the requirement to contract with Tyco. *See id.* at 46 (§ 4.11).

Alarm Detection alleges that this series of agreements among Bloomingdale FPD, Du-Comm, and Tyco "injured competition and consumers in the Relevant Market by eliminating all competition in the Relevant Market and increasing prices to customers." R. 245 ¶ 229. Alarm Detection contends that this is true because only the customers who remained in the contracts they originally signed with Bloomingdale FPD, which contracts now belonged to Tyco, "could continue using the same equipment and only those customers had access to the retransmission

equipment at the Bloomingdale Fire Station." R. 297 at 7-8. "By contrast," Alarm Detection argues, "Tyco's competitors needed to replace their customers' equipment, often at great expense, and take other actions to initiate monitoring services including arranging for monitoring at an approved location other than by transmission of signals to the fire station, over which Du-Comm and Tyco had been granted exclusive control." *Id.* at 8. According to Alarm Detection, Tyco's "acquisition" of Bloomingdale FPD's customer contracts has "increased [Alarm Detection's] marginal operating costs," R. 245 ¶ 277, and argues that Tyco has been able to maintain "supra-competitive pricing" because "other private alarm contractors" cannot "offer fire alarm monitoring in the Bloomindale Territory for substantially less than Tyco's pricing . . . [due to] an environment where customers rarely change alarm providers and the exclusive arrangement with Du-Comm created significant barriers to entry for other providers." R. 297 at 3; *see also id.* at 8 ("In a market where monitoring providers are rarely changed, competitors thus faced significant barriers to entry into the market, notwithstanding a generally lower cost structure for the competitors."). In other words, Alarm Detection alleges and argues that there is a certain customer inertia inherent in the fire alarm services business of which Tyco and Du-Comm have taken advantage to create a barrier to entry to, and decrease competition in, Bloomingdale FPD's territory. Alarm Detection argues that this alleged "barrier to entry" demonstrates a "likelihood of antitrust injury," which the Seventh Circuit found "'raises significant

concerns about the anti-competitive effects,'" and that these allegations plausibly allege an antitrust injury. *Id.* at 12 (quoting *ADT Sec.*, 724 F.3d at 865).

Alarm Detection's reliance on *Lisle-Woodridge* in an attempt to argue that it has plausibly alleged antitrust injury arising from the agreement between Du-Comm and Tyco is misplaced. In the *Lisle-Woodridge* case, the Seventh Circuit did not address the "inertia" that Alarm Detection finds so worrisome. Rather the Seventh Circuit was concerned with Lisle-Woodridge's entry into the business of *transmitting* fire alarm signals, as opposed to merely *receiving* them at a 911 dispatch center, and the related requirement that fire alarm customers use only one type of transmitter technology to send fire alarm signals to Bloomingdale FPD's dispatch center. *See* R. 237 at 28 (*Alarm Detection*, 129 F. Supp. 3d at 630 (citing *ADT Sec.*, 724 F.3d at 865; 672 F.3d at 503)). Alarm Detection has not made any analogous allegations with regard to the agreement between Tyco and Du-Comm. And the Court's review of that contract does not reveal that customers in Bloomingdale FPD's territory must use a certain technology to transmit their fire alarm signals to Du-Comm. It is true that Tyco has arranged to use the old Bloomingdale FPD fire alarm signal receiving center to receive signals from its customers and then relay those signals on to Du-Comm (where Tyco also has leased space for its equipment). But Alarm Detection has not alleged, and the contracts between Tyco and Du-Comm, and Du-Comm and Bloomingdale FPD do not show, that customers are required to contract with Tyco to send signals to Du-Comm. Thus, Alarm Detection's reference to the *Lisle-Woodridge* decision to support its

argument that Tyco and Du-Comm have taken advantage of the inertia inherent in the fire alarm services business in violation of the Sherman or Clayton Acts is unavailing.

To the extent Alarm Detection's concern with customer inertia is not simply that it is difficult to convince customers to change to a new fire alarm service provider, but that the cost of replacing the fire alarm signal transmission equipment in a customer's building is so high that it creates a barrier to market entry, Alarm Detection has failed to adequately plead such a theory. Alarm Detection neither fully made such allegations in its complaint or expressly makes such arguments in its briefs. To plausibly allege such a theory Alarm Detection would have to have alleged the relevant prohibitive costs, which should be within Alarm Detection's knowledge and control. If it could have plausibly made such an allegation, presumably it would have done so in this third iteration of its complaint.

Alarm Detection also attempts to show anti-trust injury by alleging that Tyco and Du-Comm's actions have resulted in higher prices for customers in the Bloomingdale FPD territory. *See* R. 245 ¶ 78. This allegation, however, is also insufficiently pled. Alarm Detection alleges that Tyco continues to charge its customers $55 per month as provided by the contracts it purchased from Bloomingdale FPD, but fails to allege what it would charge customers under similar circumstances, even though such information is certainly available to it. Furthermore, Alarm Detection's allegation that Tyco charges materially higher prices is belied by the fact (which Alarm Detection also alleges) that customers in

Bloomingdale are free to contract with any private alarm company. To the extent that Tyco's prices are higher than the market will bear, customers should migrate to other private alarm companies like Alarm Detection. Notably, however, Alarm Detection's allegations regarding customer movement within the Bloomingdale FPD territory do not reflect that Tyco's prices are materially different from its competitors. As of September 5, 2014, nine months after Bloomingdale informed customers in its territory that they were free to purchase fire alarm services from a "company of your choice," 52% of Bloomingdale FPD's former customers had exited the contract they signed with Bloomingdale FPD, and 63.8% of those customers had signed a contract with a Tyco competitor. *See* R. 245 ¶¶ 65, 79. These statistics show that to the extent a barrier to entry exists, it is not a material one.

Additionally, Alarm Detection's reference to Du-Comm's "exclusive arrangement with Tyco," R. 296 at 2, 10, is vague and unsupported by the terms of Tyco's contract with Du-Comm. If it were the case that Bloomingdale FPD customers could only send their fire alarm signals to Du-Comm's dispatch center if they used Tyco as their fire alarm signal service company, that might plausibly state a claim that Tyco and Du-Comm have erected a "barrier to entry" that is "effectively precluding" Alarm Detection from competing in the Bloomingdale FPD territory. *See ADT Sec.*, 724 F.3d at 865. But Alarm Detection has not made such an allegation. Moreover, Tyco's contract with Du-Comm contemplates that there will be customers who connect to Du-Comm without using Tyco. *See* R. 254-4 at 44 (§ 3.3), 46 (§ 4.11). Thus, to the extent that Tyco has an "exclusive" contractual

relationship with Du-Comm, Alarm Detection has failed to alleged that relationship "makes it unduly burdensome," *ADT Sec.*, 724 F.3d at 865, for Alarm Detection to compete for customers in Bloomingdale.

Lastly, in further support of its argument that it has plausibly alleged an antitrust injury arising from the agreement between Du-Comm and Tyco, Alarm Detection essentially asks the Court to reconsider a holding from its September 8 Order. In the September 8 Order, the Court held that Alarm Detection's allegation that it and other private fire alarm companies have acquired a significant percentage of the fire alarm business in Bloomingdale FPD's territory since Bloomingdale FPD exited the business belies Alarm Detection's claim that it has suffered an anti-trust injury. In support of its argument that this holding is incorrect, Alarm Detection cites the Supreme Court's decision in *Blue Shield of Virginia v. McCready* in which the Supreme Court held that a plaintiff "need not prove an actual lessening of competition in order to recover." *Blue Shield of Va. v. McCready*, 457 U.S. 465, 482 (1982). Rather, the Supreme Court continued, "competitors may be able to prove antitrust injury before they actually are driven from the market and competition is thereby lessened." *Id.* Alarm Detection argues that this holding should be understood to mean that allegation of a "*likelihood* of antitrust injury" is sufficient at the pleading stage, *see* R. 297 at 12 (emphasis added), and that its allegation that Tyco acquired a "leg up" with the tendency of customers to remain with their current fire alarm service company, *id.* at 11, plausibly demonstrates likelihood of such an injury. But in *McCready* the facts were

materially different than those at issue here, because the defendants in *McCready* imposed a "Hobson's choice" on the market. In *McCready*, the defendant insurance company reimbursed psychiatrists for psychotherapy charges but not psychologists. *See* 457 U.S. at 483. In such circumstances it was readily apparent that the defendant insurance company's policy would create a competitive advantage for psychiatrists in the "psychotherapy market." *Id.* at 484. Alarm Detection has not alleged similar circumstances here. Rather, as the Court noted in its September 8 Order, the "leg up" or "inertia" that Alarm Detection cites as the source of its injury and attempts to equate to the Hobson's Choice present in *McCready* was not created by Tyco or Du-Comm, but is "a reflection of the alarm system market in general, not a characteristic of the agreements Tyco made with Bloomingdale." R. 237 at 41 (*Alarm Detection*, 129 F. Supp. at 636). Furthermore and unlike the facts in *McCready*, customers in the Bloomingdale territory were permitted to choose a new fire alarm services provider after Tyco began servicing their equipment. Alarm Detection downplays the significance of this fact because the "restraints at issue in *McCready* also resulted in a choice for consumers," and that did not prevent the Supreme Court from holding that the plaintiff had sufficiently pled an anti-trust injury. R. 297 at 13. But as discussed, the "choice" in *McCready* was a "Hobson's Choice," which of course is not a choice at all. Alarm Detection has made no analogous allegations here.

Therefore, Alarm Detection's claims against Tyco and Du-Comm for violation of the Sherman and Clayton Acts based on their conduct in Bloomingdale are

dismissed because it has failed to plausibly allege an antitrust injury arising from their actions.

### B. Tyco and Orland FPD in Orland (Counts III, VI, and IX)

The Court previously held that "Alarm detection has plausibly alleged that [Orland FPD] has authorized Tyco to sell or lease the transmission equipment subscribers must use to connect to [Orland FPD's] communications center," and that by doing so "Tyco and [Orland FPD] are 'effectively precluding' Alarm Detection and other alarm companies from competing for business in Orland." R. 237 at 44 (*Alarm Detection*, 129 F. Supp. 3d at 638). The allegations upon which the Court based this holding remain in Alarm Detection's second amended complaint, and neither Tyco nor Orland FPD have made any new arguments requiring the Court to reconsider its decision.

Tyco attempts to convince the Court otherwise by arguing that Alarm Detection has failed to allege a geographic market. The Court rejected this argument in its September 8 Order. Whether the Orland territory is a defined geographic market for purposes of the antitrust laws "'is a deeply fact-intensive inquiry, [and] courts hesitate to grant motions to dismiss for failure to plead a relevant product market.'" *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 901 (N.D. Ill. 2011) (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001)). Moreover, in the *Lisle-Woodridge* case the district court and the Seventh Circuit implicitly acknowledged that a fire protection district can at least plausibly meet the definition of a geographic market for purposes of

antitrust laws. *See generally ADT Sec.*, 724 F.3d 854; *ADT Sec.*, 973 F. Supp. 2d 839, 842 (N.D. Ill. 2013) (noting that the case was headed for trial). Thus, the Court will not dismiss Alarm Detection's claims against Orland FPD and Tyco for a failure to allege a geographic market.

Tyco also argues that Alarm Detection has failed to allege a conspiracy. Of course Tyco and Orland FPD had a contract and that is certainly enough to allege an agreement which can form the basis of a conspiracy. *See Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 478 (7th Cir. 1988) ("exclusive contracts [can] violate the Sherman Act. . . . depend[ing] on the effect that contract has upon competition in the relevant market place"); *Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 68 (1st Cir. 2002) ("All implemented exclusive dealing contracts involve both a nominal conspiracy (the agreement) and acts in furtherance (whatever dealings take place)."). Tyco's real argument is that Alarm Detection has "allege[d] no reason, and certainly no rational reason sufficient to nudge its claims across the line from conceivable to plausible, why [Orland FPD] would want to confer a monopoly on Tyco." R. 276 at 31. Tyco argues further that "it is in [Orland FPD's] own interests to have competition for this contract." *Id.* But it is not competition for the *contract* Tyco has with Orland FPD that is relevant. Rather, Alarm Detection alleges that Tyco's agreement with Orland FPD precludes Alarm Detection from competing for *customers* in the Orland territory. Moreover, the lack of a definitive answer regarding Orland FPD's and Tyco's motives at this point in the proceedings does not change the fact that Alarm Detection has plausibly alleged that Orland

FPD and Tyco intended to—and did—enter into an agreement that would materially decrease the ability of other private fire alarm companies to compete in the Orland territory. This is sufficient to satisfy the conspiracy element of Sherman Act Sections 1 and 2, and the Clayton Act.

Therefore, the Court denies Tyco's and Orland FPD's motions to dismiss Alarm Detection's Sherman and Clayton Act claims against them.

### C.      Tyco and Orland FPD in Lemont (Counts II, V, and VII)

Alarm Detection has added a new claim against Orland FPD in its second amended complaint regarding Orland FPD's agreement to provide fire alarm services in Lemont. In its prior complaint, Alarm Detection alleged that Orland FPD had such an agreement with Lemont, but Alarm Detection did not seek relief from Orland FPD on that basis. Now Alarm Detection does seek such relief in the second amended complaint.

Alarm Detection has plausibly alleged violations of the Sherman and Clayton Acts by Tyco and Orland FPD in the Orland territory on the basis of the contract between Tyco and Orland FPD. Alarm Detection alleges that this contract also governs Tyco and Orland FPD's activities in the Lemont territory. Thus, to the extent that the contract between Tyco and Orland FPD supports Sherman and Clayton Act claims for Tyco and Orland FPD's actions in the Orland territory, that contract also supports claims for Tyco and Orland FPD's actions in the Lemont territory. Therefore, Tyco's and Orland FPD's motions to dismiss these claims is denied.

## III. The Fourteenth Amendment

### A. Du-Comm and Tyco in Bloomingdale (Count X)

Alarm Detection alleges that Tyco's agreement with Bloomingdale FPD and Du-Comm violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment. As an initial matter, Du-Comm argues that Alarm Detection's Fourteenth Amendment claims against it are barred by the two-year statute of limitations, because Du-Comm first entered an agreement with Bloomingdale FPD on January 2, 2013, but Alarm Detection did not sue Du-Comm until October 15, 2015. *See* R. 277 at 29-30. Du-Comm also argues that Alarm Detection was aware of the relevant regulatory circumstances in the Bloomingdale territory as of 2005 when Bloomingdale FPD passed its ordinance. *Id.* The Court, however, agrees with Alarm Detection that its allegations against Du-Comm are based on its March 1, 2014 agreement with Tyco, and that neither Bloomingdale FPD's 2005 ordinance nor Du-Comm's 2013 agreement with Bloomingdale FPD would have given Alarm Detection "reason to know of the injury" it alleges it suffered from the agreement between Du-Comm and Tyco. *See Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996). March 1, 2014 is within two years of October 15, 2015 when Alarm Detection filed the second amended complaint, which included claims against Du-Comm. Thus, Alarm Detection's claims against Du-Comm are timely.

#### 1. Equal Protection

Alarm Detection alleges that "[e]ven though Du-Comm had no constitutional or statutory authority to engage in fire alarm monitoring or collecting fees from

Commercial Accounts in the Bloomingdale Territory . . . it only worked with Tyco in in the Bloomingdale Territory pursuant to the Du-Comm/Tyco 2014 agreement," R. 245 ¶ 307, and that this "intentional preferential treatment of Tyco constitutes a violation of [Alarm Detection's] constitutional rights under the Equal Protection Clause." *Id.* ¶ 311. "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motived by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). "To prove demonstrate discriminatory effect . . . plaintiffs are required to show . . . . that [defendants] treated them differently than other similarly situated individuals." *Chavez*, 251 F.3d at 636. To state a claim for violation of the Equal Protection Clause, plaintiffs usually must allege that they are members of a "suspect class" or that they were denied a "fundamental right." *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). In the absence of either scenario, a plaintiff can allege that the defendant discriminated against the plaintiff in particular—so called "class-of-one" claims—which requires the plaintiff to allege that "the plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Id.* To plausibly allege such a claim, the "plaintiff must negate any reasonably conceivable state of facts that could provide a rational basis." *Jackson v. Village of Western Springs*, 612 Fed. App'x 842, 847 (7th Cir. 2015).[7]

---

[7] Only state actors can be liable for Fourteenth Amendment violations. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("The Equal Protection Clause reaches only state actors . . . ."); *Srail*, 588 F.3d at 943 ("Rational

It is unclear whether Alarm Detection intends to allege that Du-Comm discriminated against it (1) by making a deal with Tyco rather than Alarm Detection (although Alarm Detection has not alleged that it sought the contract Tyco was awarded) or (2) because the privileges Tyco receives pursuant to its agreement with Du-Comm unfairly exclude Alarm Detection from competing in the fire alarm services market. In either case, Alarm Detection has failed to allege a discriminatory effect. Du-Comm sought a company to provide equipment for its communications center and chose Tyco. Such a selection "inherently involves a kind of discrimination," but it does not violate the Equal Protection Clause when government actors merely exercise their discretion. *See Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.,* 682 F.3d 1293, 1298 (11th Cir. 2012); *see also Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1129 (8th Cir. 2016) ("Furthermore, a class-of-one claim does not extend to cases where the rules are uniformly applicable and a state official exercises his discretionary authority based on subjective, individualized determinations."). The mere fact that Du-Comm entered into an agreement with one fire alarm services company rather than another does not plausibly state a claim for violation of the Equal Protection Clause.

Alarm Detection has also failed to plausibly allege that the terms of Du-Comm's contract with Tyco (which the Court has considered on this motion to

---

basis review requires the plaintiff to prove that . . . the state actors intentionally treated plaintiffs differently from others similarly situated . . . ."). Just as in the briefing on the first amended complaint, *see* R. 237 at 48 n.14, no Defendant has argued that it is not a state actor. Thus, the Court does not make a ruling on this issue.

dismiss) unfairly favor Tyco and discriminate against Alarm Detection with regard to access to the Bloomingdale fire alarm market. As discussed with reference to Alarm Detection's antitrust claims, Du-Comm's agreement with Tyco expressly provides that "Non-Participating Member Departments" may connect with Du-Comm without being required to use Tyco's equipment or to contract with Tyco. These contractual provisions belie Alarm Detection's allegations that the "exclusive" nature of Du-Comm's agreement with Tyco prevents Alarm Detection from accessing the Bloomingdale territory market. Since Du-Comm's agreement with Tyco does not prevent or burden Alarm Detection's ability to provide its customers access to Du-Comm's communications center, Alarm Detection has failed to plausibly allege that Du-Comm discriminates against it. Thus, Alarm Detection has failed to state a claim for violation of the Equal Protection Clause based on the supposed "exclusive" nature of Du-Comm's agreement with Tyco.

### 2. Due Procees

Alarm Detection also alleges that Du-Comm and Tyco's agreement deprived it of its "rights under its license under the Alarm Act to provide fire alarm services . . . to existing [and] prospective customers" in violation of the Due Process Clause. R. 245 ¶ 304. Some courts have held that a government actor can violate the Due Process Clause by "destroy[ing] the value of [a] plaintiff['s] licensed business." *Reed v. Village of Shorewood*, 704 F.2d 943, 949 (7th Cir. 1983); *see also United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969) ("The right to pursue a lawful business including the solicitation of customers necessary to the conduct of such business has

long been recognized as a property right within the protection of the Fifth and Fourteenth Amendments of the Constitution."). But to the extent Alarm Detection alleges that Du-Comm's agreement with Tyco had such an effect on Alarm Detection's property, that claim is contrary to the provisions of the contract between Du-Comm and Tyco. As discussed, the agreement between Du-Comm and Tyco—regardless of whether it violates the District Act—does not prevent Alarm Detection from pursuing customers in Bloomingdale, because it contemplates that "Non-Participating Member Departments" can connect to Du-Comm without contracting with Tyco. Any "exclusive" rights Du-Comm has granted to Tyco do not prevent Alarm Detection from providing its customers with a connection to Du-Comm. And since Du-Comm and Tyco's agreement does not prevent Alarm Detection from providing its customers with a connection to Du-Comm, Alarm Detection's allegation that it has been deprived of the right to provide fire alarm services in the Bloomingdale territory is not plausible.

### B. Orland FPD and Tyco in Orland (Count XII)

In the September 8 Order the Court held that Alarm Detection's Fourteenth Amendment claims against Orland FPD and Tyco based on their conduct in the Orland territory were barred by the statute of limitations. Alarm Detection has not added any new allegations regarding these claims. Even though Orland FPD and Tyco renewed their agreement in 2014, there was no material change in the agreement, and the Fourteenth Amendment violation Alarm Detection alleges was apparent from the inception of the original agreement in 2005. *See Savory v. Lyons*,

469 F.3d 667, 672 (7th Cir. 2006) (the "continuing violation doctrine" applies only in instances where "the plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run" or "where the violation only becomes apparent in light of later events"); *Garrison v. Burke*, 165 F.3d 565, 569 (7th Cir. 1999) (The continuing violation doctrine applies "*only* if a reasonable person in the position of the plaintiff would not have known, at the time the untimely acts occurred, that [he] had a claim.") (emphasis added). Thus, the Court's holding that these claims are untimely stands.

### C. Orland FPD and Tyco in Lemont (Count XI)

Alarm Detection's Fourteenth Amendment claims against Orland FPD and Tyco for their actions in the Lemont territory are based on an agreement with the same terms as the agreement Orland FPD and Tyco have with respect to the Orland territory. For this reason, Orland FPD argues that since Alarm Detection's Fourteenth Amendment claims against Orland FPD and Tyco for their actions in the Orland territory are time-barred, Alarm Detection's Fourteenth Amendment claims against Orland FPD and Tyco for their actions in the Lemont territory should also be time barred. But although Alarm Detection was aware of the terms of the agreement as they applied in the Orland territory as early as 2005, Orland FPD and Tyco did not begin working in the Lemont territory until 2014. Thus, Alarm Detection's claims against Tyco and Orland FPD for their conduct in the Lemont territory did not accrue until 2014, and the claims are not time-barred.

### 1.	Equal Protection

Alarm Detection alleges that Orland's agreement with Tyco permits Tyco to require customers in the Lemont territory to lease transmission equipment from Tyco. The Seventh Circuit has held that the District Act does not authorize fire alarm protection districts to engage in the transmission of fire alarm signals. Alarm Detection contends that because Orland FPD lacks authority under the District Act to make its agreement with Tyco, its decision to make that agreement is arbitrary and cannot withstand rational basis review under the Equal Protection Clause. Alarm Detection also alleges that Orland FPD and Tyco entered this agreement "with the express purpose and intent of unlawfully restraining competition and thereby excluding [Alarm Detection] and other potential competitors" from the Lemont market. *See* R. 245 ¶ 203. These allegations plausibly allege both a discriminatory effect and a discriminatory purpose. Further, Alarm Detection's allegation that Orland FPD and Tyco's agreement violates the District Act is sufficient to allege arbitrary conduct that satisfies the rational basis test. *See Leib v. Hillsborough Cnty. Pub. Trans. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) ("The rational basis test asks (1) whether the government has the power or authority to regulate the particular area in questions . . . ."). Thus, Alarm Detection has stated a claim for violation of the Equal Protection Clause with respect to Orland FPD and Tyco's action in the Lemont territory.

## 2. Due Process

Similarly, the allegation the Alarm Detection or any other private fire alarm company must contract with Tyco for use of its equipment to transmit fire alarm signals to use Tyco's equipment plausibly alleges that Orland FPD's agreement with Tyco "destroys the value" Alarm Detection's "licensed business" in violation of the Due Process Clause. *See Reed*, 704 F.2d at 949. This allegation is bolstered by the additional allegation that Tyco has retained all the commercial accounts it received through its deal with Lemont FPD. *See* R. 245 ¶¶ 98-99. Thus, Alarm Detection also has stated a claim for violation of the Due Process Clause with respect to Orland FPD and Tyco's action in the Lemont territory.

## IV. Unjust Enrichment (Count XVI)

Alarm Detection alleges that Defendants received benefits, in the form of fees that are not authorized by the District Act, and as a result of this conduct Alarm Detection "was unable to effectively compete" in the relevant markets. *See* R. 245 ¶ 368. Generally, "unjust enrichment cases involve situations in which the benefit the plaintiff is seeking to recover proceeded directly from [the plaintiff] to the defendant." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Unjust enrichment, however, may also occur where "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." *Id.* (internal citations

omitted). Here, Alarm Detection argues that Defendants "procured" benefits from the third party fire protection districts through the "illegal conduct" of excluding Alarm Detection from the alleged geographic markets at issue. *See* R. 245 ¶ 368.

To the extent that Alarm Detection seeks to recoup the fees Defendants have collected, that claim for unjust enrichment must be dismissed. "Even under the 'wrongful conduct' circumstances, [a plaintiff] must show some entitlement to the [benefit at issue] allegedly enjoyed by the [defendant]." *Cement-Lock v. Gas Tech. Institute*, 523 F. Supp. 2d 827, 863 (N.D. Ill. 2007) (citing *Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 WL 2223801, at *7 (N.D. Ill. Sept. 26, 2003)). Alarm Detection has not produced evidence that it has any such entitlement. Thus, its motion for summary judgment on unjust enrichment claim seeking the fees Defendants have collected is denied, and Defendants' cross-motions for summary judgment are granted.

Nevertheless, Alarm Detection also alleges that Defendants were unjustly enriched because Defendants' actions caused Alarm Detection to be "unable to effectively compete." Courts have acknowledged the possibility that allegations of antitrust injury could also support a claim for unjust enrichment so long as the applicable state law "does not require direct dealing between the plaintiff and defendant." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *21 (N.D. Ill. June 29, 2015); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 948-49 (N.D. Ill. 2009). Although Illinois law requires "some entitlement" to the benefit at issue, Illinois law also permits that benefit to have been procured by

the defendant from a third party, as opposed to "direct dealing between the plaintiff and defendant." Thus, as the Court describes below, Alarm Detection's unjust enrichment claims survive to the extent Alarm Detection has successfully alleged antitrust claims. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("What makes the retention of the benefit unjust is often due to some improper conduct by the defendant. And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute. So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

## A.     Du-Comm and Tyco in Bloomingdale

Alarm Detection's unjust enrichment claim fails with respect to Du-Comm and Tyco's actions in the Bloomingdale territory. As an initial matter, this claim against Du-Comm is time barred under the one-year statute of limitations of 745 ILCS 10/1-26, 8-102. Du-Comm's agreement with Tyco took effect on January 14, 2014, and Alarm Detection did not sue Du-Comm until more than one year later on October 15, 2015.

The statute of limitations that protects Du-Comm is applicable to local public entities, and thus does not protect Tyco. But as discussed both in the Court's September 8 Order and this Order, Alarm Detection has failed to allege that it has suffered any detriment to its business in the Bloomingdale territory. The Court held in its September 8 Order that Tyco's acquisition of the right to service the

customers contracts formerly owned by Bloomingdale FPD was not improper. The Court has also held that Du-Comm's agreement with Tyco does not illegally burden Alarm Detection's ability to compete for business in the Bloomingdale territory. Alarm Detection has failed to plausibly allege that any of the defendants in the Bloomingdale territory have improperly acquired a benefit to Alarm Detection's detriment. Thus, Alarm Detection's unjust enrichment claim against Du-Comm and Tyco for their actions in the Bloomingdale territory is dismissed.[8]

### B.    Orland FPD and Tyco in Orland and Lemont

Alarm Detection has plausibly alleged that Orland FPD's contract with Tyco burdens its ability to compete in the Orland and Lemont territories. These allegations also plausibly allege that Orland FPD and Tyco have improperly acquired benefits to Alarm Detection's detriment, and thus, are sufficient to state a claim for unjust enrichment.

Orland FPD argues that Alarm Detection does not have standing to make its unjust enrichment claim because it is not a party to the agreement between Orland FPD and Tyco. But Alarm Detection's unjust enrichment claim does not question the "validity" of that contract, as Orland FPD argues that it does. *See* R. 269 at 14. Rather, Alarm Detection alleges that the agreement between Orland FPD and Tyco has enabled them to acquire benefits to Alarm Detection's detriment in the form of excluding Alarm Detection from the Orland and Lemont markets. Alarm Detection

---

[8] Because the Court has dismissed all of Alarm Detection's claims against Du-Comm on other grounds the Court declines to address Du-Comm's arguments that the claims against it should be dismissed for claim preclusion and immunity from federal and state antitrust laws.

does not have to be a party to the Orland FPD and Tyco agreement to make this claim.

## Conclusion

For the foregoing reasons, Alarm Detection's motion for summary judgment on Counts XIII, XIV, XV, and the relevant parts of Count XVI, R. 246, is denied; Defendants' cross motions for summary judgment on those counts, R. 270; R. 278; R. 280, are granted; and those counts are dismissed. Du-Comm's motion to dismiss, R. 275, is granted, and Counts I, IV, VIII, X, and XVI, to the extent they pertain to Du-Comm, are dismissed. Tyco's motion to dismiss, R. 276, is denied with respect to Counts II, III, V, VI, VII, IX, XI, and the relevant parts of Count XVI as described in this Order; and granted with respect to Counts I, IV, VIII, X, XII, and the relevant parts of Count XVI as described in this Order, and those counts are dismissed with respect to Tyco. Orland FPD's motion to dismiss, R. 268, is denied with respect to Counts II, III, V, VI, VII, IX, XI, and the relevant parts of Count XVI as described in this Order; and granted with respect to Count XII and the relevant parts of Count XVI as described in this Order.

To the extent Alarm Detection alleges in any of the counts of its complaint that Tyco or Orland FPD have liability for either Lemont FPD's or Bloomingdale FPD's decisions to transfer responsibility for their former customer contracts to Tyco, those claims are dismissed. The Court found that Lemont FPD's and Bloomingdale FPD's actions were reasonable under the circumstances for the

reasons stated in its September 8 Order, and nothing in Alarm Detection's second amended complaint alters that reasoning.

Tyco's and Orland FPD's requests for attorneys' fees and costs is denied. Several claims Alarm Detection pleads in its second amended complaint, which it did not plead in its first amended complaint, have survived Tyco's and Orland FPD's motions to dismiss. Thus, an award of fees and costs is not warranted.

Considering the detailed nature of the three iterations of Alarm Detection's complaint, the Court is skeptical that there are any other allegations Alarm Detection could make to cure the deficiencies the Court has described with regard to the claims the Court has dismissed. For this reason, the claims dismissed according to this Order are dismissed with prejudice.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated:  July 7, 2016